**ECKERT SEAMANS CHERIN & MELLOTT, LLC**
Nicholas M. Gaunce, Esq.
*Physical Address*:   2000 Lenox Drive, Suite 203,
                                Lawrenceville, NJ 08648
*Mailing Address*:    P.O. Box 5404, Princeton, NJ 08543
(609) 392-2100 *(phone)*
(609) 392-7956 *(facsimile)*
**Attorneys for Defendant, Liberty Power Corp., LLC**

|  |  |
|---|---|
| RICHARD ZELMA, | UNITED STATES DISTRICT COURT<br>DISTRICT OF NEW JERSEY |
| *Plaintiff,* | Civil Action No.: 2:19-cv-8961 |
| v. | DOCUMENT FILED ELECTRONICALLY |
| LIBERTY POWER CORP., LLC, | |
| *Defendant.* | **Motion Return Date: May 20, 2019** |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

**ECKERT SEAMANS CHERIN & MELLOTT, LLC**
*Physical Address:* 2000 Lenox Drive, Suite 203,
Lawrenceville, NJ 08648
*Mailing Address:* P.O. Box 5404, Princeton, NJ 08543
(609) 392-2100 *(phone)*
(609) 392-7956 *(facsimile)*
*Attorneys for Defendant, Liberty Power Corp., LLC*

*Of Counsel and on the Brief:*
Nicholas M. Gaunce, Esq.

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES……………………………………………………………………iii

I.      <u>INTRODUCTION</u>……………………………………………………………………1

II.     <u>STANDARD OF REVIEW</u>………………………………………………………1

III.    <u>LEGAL ARGUMENT</u>……………………………………………………………2

        **A.**     **Plaintiff's TCPA Claims Must Be Dismissed for Failure to State a Claim Because They Violate the First Amendment's Prohibition on Content Based Speech Restrictions………………………………………………..…………..2**

           **1. Laws that Regulate the Content of Speech are Presumptively Unconstitutional…2**

           **2. The Content-Based Prohibitions Addressed in *Reed* Do not Depend Upon the Purpose for the Law……………………………….................................................3**

           **3.  The TCPA Is a Content-Based Statute…………….…………………………..5**

           **4. The TCPA Does Not Survive the Required Strict Scrutiny Examination……..….6**

        **B.**     **Count III Should be Dismissed Because it is Based on an Alleged Violation an the Affirmative Defense (47 U.S.C. §  227(c)(5)(C)) and Is Not an Independent Cause of Action Under the TCPA…………………………………12**

        **C.**     **Count IV Should be Dismissed Because Does Not Indicate Which of the TCPA's Prohibitions Plaintiff is Alleging was Violated and is Duplicative of The Complaint's Previous Counts………………………………………………13**

        **D.  Count II Should be Dismissed Because Plaintiff Fails to Identify an Ascertainable Loss…………………………………………………………………………...14**

        **E. The Plaintiff is not Entitled to Much of the Relief That He Seeks………………………15**

IV.    <u>CONCLUSION</u>....................................................................................................19

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Am. Ass'n of Political Consultants v. Sessions,*
  No. 5:16 cv 252-D, 2018 WL 1474075 (E.D.N.C. Mar. 24, 2018) .......................................... 6

*Arizona Free Enterprise Club's Freedom Club PAC v. Bennett,*
  564 U.S. 721 (2011) ......................................................................... 7

*Arkansas Writers' Project, Inc. v. Ragland,*
  481 U.S. 221 (1987) ....................................................................... 11

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ......................................................................... 1

*Bank v. Caribbean Cruise Line, Inc.,*
  No. 12-CV-584, 2014 WL 1883586 (E.D.N.Y. May 12, 2014) ........................................... 17

*Bell Atlantic Corp. v. Twombly,*
  550 U.S. 544 (2007) .................................................................... 1, 13

*Brickman v. Facebook, Inc.,*
  230 F. Supp.3d 1036 (N.D. Cal. 2017) ...................................................... 6, 9, 10

*Brown v. Entm't Merchants Ass'n,*
  564 U.S. 786 (2011) .................................................................... 2, 8, 9

*Cahaly v. Larosa,*
  796 F.3d 399 (4th Cir. 2015) ................................................................ 4

*Carey v. Brown,*
  447 U.S. 455 (1980) .................................................................... 2, 6, 11

*Citizens United v. Fed Election Comm'n,*
  558 U.S. 310 (2010) ....................................................................... 6, 7

*City of Cincinnati v. Discovery Network, Inc.,*
  507 U.S. 410 (1993) ......................................................................... 3

*City of Los Angeles v. Lyons,*
  461 U.S. 95 (1983) ........................................................................ 16

*Clatterbuck v. City of Charlottesville,*
  708 F.3d 549 (4th Cir. 2013) ................................................................ 4

*Cody v. Cox,*
  509 F.3d 606 (D.C. Cir. 2007) .............................................................. 18

*Connor B. ex rel. Vigurs v. Patrick,*
  771 F. Supp. 2d 142 (D. Mass. 2011) ........................................................ 17

*Cooper v. Dillon,*
  403 F.3d 1208 (11th Cir. 2005) .............................................................. 7

*Cunningham v. Kondaur Capital,*
  No. 3:14-1574, 2014 WL 8335868 (M.D. Tenn. Nov. 19, 2014) ................................... 15

*Easterling v. Connecticut, Dep't of Correction,*
 265 F.R.D. 45 (D. Conn. 2010), *modified*, 278 F.R.D. 41 (D. Conn. 2011) ........................... 18

*Edwards v. Emperor's Garden Rest.,*
 122 Nev. 317, 130 P.3d 1280 (2006) .................................................................................... 17

*FCC v. Fox Television Stations, Inc.,*
 567 U.S. 239 (2012) ............................................................................................................... 11

*Flaherty v. Knapik,*
 999 F. Supp. 2d 323 (D. Mass. 2014) ...................................................................................... 7

*Ford v. Reynolds,*
 167 Fed. App'x. 248 (2d Cir. 2006) ....................................................................................... 18

*Free Enterprise Fund v. Public Co. Accounting Oversight Bd.,*
 561 U.S. 477 (2010) ............................................................................................................... 11

*Free Speech Coalition, Inc. v. Attorney General United States,*
 825 F.3d 149 (3d. Cir. 2016) .................................................................................................... 4

*Frisby v. Schultz,*
 487 U.S. 474 (1988) ................................................................................................................. 7

*Gallion v. Charter Commc'ns, Inc.,*
 287 F. Supp.3d 920 (C.D. Cal. 2018) ................................................................................. 6, 9

*Greenley v. Laborers' Int'l Union of N. Am.,*
 271 F. Supp.3d 1128 (D. Minn. 2017) ................................................................................ 6, 9

*Hamilton v. Voxeo Corp.,*
 No. CIV.A. 3:07-CV-404, 2009 WL 1868541 (S.D. Ohio June 25, 2009) ........................... 17

*Holt v. Facebook, Inc.,*
 240 F. Supp.3d 1021 (N.D. Cal. 2017) ............................................................................... 6, 9

*IMS Health Inc. v. Sorrell,*
 630 F.3d 263 (2d Cir. 2010), *aff'd*, 564 U.S. 552 (2011) ....................................................... 8

*Ingerson v. Pratt,*
 No. CIV.A. 76-3255-S, 1981 WL 687506 (D. Mass. Sept. 17, 1981) .................................. 18

*Kirkeby v. Furness,*
 92 F.3d 655 (8th Cir. 1996) ..................................................................................................... 7

*Lary v. Trinity Physician Fin. & Ins. Servs.,*
 780 F.3d 1101 (11th Cir. 2015) .............................................................................................. 17

*Lucia v. SEC,*
 138 S. Ct. 2044 (2018) ........................................................................................................... 11

*Lujan v. Defs. of Wildlife,*
 504 U.S. 555 (1992) ............................................................................................................... 16

*Mainstream Mktg. Servs., Inc. v. F.T.C.,*
 358 F.3d 1228, 1246 (10th Cir. 2004) ................................................................................. 8, 9

*Martin v. City of Struthers, Ohio,*
 319 U.S. 141 (1943) ................................................................................................................. 8

*Mayer v. Belichick,*
   605 F.3d 223 (3d Cir. 2011) .................................................................. 2

*Mejia v. Time Warner Cable, Inc.,*
   No. 15 cv 6445, 2017 WL 3278926 (S.D.N.Y. Aug. 1, 2017) .............. 6

*Minnesota ex rel. Hatch v. Sunbelt Commc'ns & Mktg.,*
   282 F. Supp. 2d 976 (D. Minn. 2002) ................................................. 17

*Moser v. F.C.C.,*
   46 F.3d 970 (9th Cir. 1995) .................................................................. 4

*Nat'l Fed'n of the Blind v. F.T.C.,*
   420 F.3d 331 (4th Cir. 2005) ................................................................ 9

*Pine v. City of W. Palm Beach,*
   762 F.3d 1262 (11th Cir. 2014) ............................................................ 7

*Police Department of Chicago v. Mosley,*
   408 U.S. 92 (1972) .......................................................................... 3, 10

*Pollard v. AEG Live, LLC,*
   No. 14-1155, 2016 WL 3450818 (D. N.J. June 20, 2016) ................... 14

*Preiser v. Newkirk,*
   422 U.S. 395 (1975) ............................................................................ 18

*R.A.V. v. St. Paul,*
   505 U.S. 377 (1992) .............................................................................. 3

*Rappa v. New Castle Cty.,*
   18 F.3d 1043 (3d Cir. 1994) ............................................................... 10

*Reed v. Town of Gilbert, Ariz.,*
   135 S. Ct. 2218 (2015) ................................................................. passim

*Rowan v. United States Post Office,*
   397 U.S. 728 at 737-738 (1970) ........................................................... 8

*Simon & Schuster, Inc. v. Members of N.Y. State Crime Victims Bd.,*
   502 U.S. 105 (1991) .......................................................................... 3, 4

*Simon v. E. Kentucky Welfare Rights Org.,*
   426 U.S. 26 (1976) ............................................................................. 17

*Steffel v. Thompson,*
   415 U.S. 452 (1974) ............................................................................ 18

*Swift & Co. v. United States,*
   276 U.S. 311 (1928) ............................................................................ 16

*Thiedemann v. Mercedes-Benz USA, LLC,*
   183 N.J. 234 (2005) ........................................................................... 14

*United States v. Aluminum Co. of Am.,*
   148 F.2d 416 (2d Cir. 1945) ............................................................... 18

*United States v. Playboy Entm't Group, Inc.,*
   529 U.S. 814-15 (2000) .................................................................... 8, 9

*United States v. Stevens,*
  533 F.3d 218 (3d Cir. 2008), *aff'd,* 559 U.S. 460 (2010)................................................ 6
*United States v. W. T. Grant Co.,*
  345 U.S. 629 (1953) ...................................................................................... 16, 18
*Victory Processing, LLC v. Michael,*
  No. 17-CV-109-ABJ, 2018 WL 4204349 (D. Wyo. Aug. 6, 2018) ............................ 7
*Wollschlaeger v. Governor, Fla.,*
  848 F.3d 1293 (11th Cir. 2017)............................................................................ 7

## Statutory Authorities

15 U.S.C. § 6101.................................................................................................. 9
47 U.S.C. § 227 et seq .......................................................................................... 1
47 U.S.C. §§ 227(b)(1)(A)(iii) ............................................................................... 5
47 U.S.C. § 227(b)(3) ......................................................................................... 13
47 U.S.C. §227(b)(3)(C)....................................................................................... 13
47 U.S.C. §§227(b)(l)(A)(iii)................................................................................ 1
47 U.S.C. § 227(c)(5) .......................................................................................... 13
47 U.S.C. §  227(c)(5)(C) ............................................................................... ii, 12
47 U.S.C. §227(c)(5)(C) ........................................................................................ 1
N.J.S.A. § 56:8-19............................................................................................... 14
N.J.S.A. §56:8-130............................................................................................... 1

## Rules and Regulations

Fed. R. Civ. P. 12(B)(6).......................................................................................... i
Fed. R. Civ. P. 12(f)............................................................................................ 14

## Constitutional Provisions

U.S. Const.art. III, § 2, cl. 1 ................................................................................ 18

## Legislative Materials

Bipartisan Budget Act of 2015, Pub. L. No. 114-74, § 301, 129 Stat. 584 (2015) ..................... 10
Pub. L. No. 114-74, 129 Stat. 584 (2015)................................................................. 5
S. 814-15 (2000) ................................................................................................. 8

## Additional Authorities

Black's Law Dictionary (15(c)) (10th ed. 2014) ....................................................... 12

## I.   <u>INTRODUCTION</u>

Defendant Liberty Power Corp., LLC, ("Liberty Power" or "Defendant"), by and through counsel, moves to dismiss Plaintiff Richard Zelma's ("Plaintiff") claims for alleged violations of the Telephone Consumer Protection Act ("TCPA") pursuant to FED. R. CIV. P. 12(b)(6).  In support thereof, Liberty Power Corp states as follows.

Plaintiff brings claims in this proceeding under two statutes: 1) the TCPA (47 U.S.C. § 227 *et seq.*); and 2) the New Jersey Consumer Fraud Act (56:8-130 *et seq.*). Compl. ¶ 1.  On March 5, 2019, Plaintiff filed his Complaint in New Jersey state court alleging four causes of action: 1) Initiating Unlawful Calls to a Cellular Telephone: Prohibited Use Of an Automated Dialing Device: Violations of 47 U.S.C. §§227(b)(l)(A)(iii); 2) Engaging in Prohibited Activity Pursuant to N.J.S.A. §56:8-130; 3) Violations of 47 U.S.C. §227(c)(5)(C) for Unlawfully Soliciting a Number on the FTC No-Call-List; and 4) Award for Statutory Trebled Damages for Willful or Knowing Violations of the TCPA, 47 U.S.C. §227(b)(3)(C).  Defendant was served on March 12, 2019 and subsequently removed this case to this Court on March 26, 2019.  (ECF No. 1).  On April 1, 2019, the Court granted an extension of time until April 16, 2019 for the Defendant to file a responsive pleading in this case.

## II.   <u>STANDARD OF REVIEW</u>

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citation omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements,

do not suffice." *Id.* at 678 (*citing Twombly*, 550 U.S. at 555)."In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached [thereto], matters of the public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2011).  Plaintiff's Complaint does not meet this standard

## III.   LEGAL ARGUMENT

### A.   Plaintiff's TCPA Claims Must Be Dismissed for Failure to State a Claim Because They Violate the First Amendment's Prohibition on Content Based Speech Restrictions

The section of the TCPA that the Plaintiff relies upon for the First Count of the Complaint is unconstitutional because it is a content-based law that does not survive strict scrutiny.  The TCPA section at issue violates both the Free Speech and the Equal Protections provisions of the Constitution.  Under the Free Speech Clause of the First Amendment to the Constitution, the "government has no power to restrict expression because of its message, its ideas, its subject matter, or its content." *Brown v. Entm't Merchants Ass'n*, 564 U.S. 786, 790–91 (2011).  Similarly, under the Equal Protection Clause of the Constitution, the government has no power to "discriminat[e] among speech-related activities" because of "the content of the [speaker's] communication." *Carey v. Brown*, 447 U.S. 455, 461 (1980).  It is well-settled that content-based regulation of speech complies with the Free Speech and Equal Protection clauses only if the Government can demonstrate that it passes strict scrutiny.  *See Reed v. Town of Gilbert, Ariz.,* 135 S. Ct. 2218, 2232 (2015).

#### 1.   Laws that Regulate the Content of Speech are Presumptively Unconstitutional

It is axiomatic that "freedom of speech" is one of the foundational concepts in the Constitution, which is found in the First Amendment and is applicable to the States through the

Fourteenth Amendment, which prohibits the enactment of laws "abridging the freedom of speech." U.S. CONST., AMDT. 1. In *Reed*, the Court held that under the Constitution "a government 'has no power to restrict expression because of its message, its ideas, its subject matter, or its content.'" *Reed,* 135 S. Ct. at 2227 (quoting *Police Dept. of Chicago v. Mosley*, 408 U.S. 92, 95 (1972)). The *Reed* Court concluded that content-based laws—those that target speech based on its communicative content—**are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests**. *Reed,* 135 S. Ct. at 2227 (emphasis added) (citing *R.A.V. v. St. Paul*, 505 U.S. 377, 395 (1992) and *Simon & Schuster, Inc. v. Members of N.Y. State Crime Victims Bd*., 502 U.S. 105, 115 (1991)). The Court in *Reed* analyzed a municipal code governing the manner in which people may display outdoor signs. *Reed,* 135 S. Ct. at 2224. The Court explained that government regulation of speech is "content based if a law applies to particular speech because of the topic discussed or the idea or message expressed." *Id.* at 2228. The Court also held that the analysis of whether a statute is "content-based" involves a "commonsense meaning of the phrase 'content based' requir[ing] a court to consider whether a regulation of speech 'on its face' draws distinctions based on the message a speaker conveys." *Id.* (citations omitted). The Court acknowledged that some facial distinctions based on a message are obvious (defining regulated speech by particular subject matter) while others are more subtle (defining regulated speech by its function or purpose). *Id.* at 2227. The Court concluded that "[b]oth are distinctions drawn based on the message a speaker conveys, and, therefore, are subject to strict scrutiny." *Id.*

### 2. The Content-Based Prohibitions Addressed in *Reed* Do not Depend Upon the Purpose for the Law

The Court in *Reed* concluded that if a law "is content based on its face [it] **is subject to strict scrutiny regardless of the government's benign motive, content-neutral justification,**

or lack of 'animus toward the ideas contained' in the regulated speech.'" *Reed*, 135 S. Ct. at 2228 (quoting *City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 429 (1993) (emphasis added)).  In fact, a content-based law can be held to be unconstitutional without a demonstration of any "illicit legislative intent" or any "evidence of an improper censorial motive."  *Reed*, 135 S. Ct. at 2228 (quoting *Simon & Schuster, Inc.*, 502 U.S. at 117).  In other words, "an innocuous justification cannot transform a facially content-based law into one that is content neutral. . . because "[i]nnocent motives do not eliminate the danger of censorship presented by a facially content-based statute, as future government officials may one day wield such statutes to suppress disfavored speech.  That is why the First Amendment expressly targets the operation of the laws— *i.e.*, the 'abridg[ement] of speech'—rather than merely the motives of those who enacted them." *Reed*, 135 S. Ct. at 2229 (quoting U.S. CONST., AMDT. 1).

Thus, the *Reed* case represents a sea change in First Amendment case law in that it did away with the notion that when determining whether a statutory restriction on speech is content-neutral, "[t]he government's purpose is the controlling consideration."  *See e.g.*, *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 555 (4th Cir. 2013) (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 791).[1]  The Supreme Court in *Reed* made clear that the government's justification or purpose in enacting the law is irrelevant. *Reed*, 135 S. Ct. at 2228–29.

---

[1] *See also, Free Speech Coalition, Inc. v. Attorney General United States*, 825 F.3d 149, 160 (3d. Cir. 2016) (noting that *Reed* required the Court to reevaluate challenged statutory language under strict scrutiny rather than intermediate scrutiny); *Cahaly v. Larosa*, 796 F.3d 399, 405 (4th Cir. 2015).  As such, pre-*Reed* cases upholding the constitutionality of the TCPA under an intermediate scrutiny analysis are irrelevant to the challenge raised by the Defendants here.  *See, e.g.*, *Moser v. F.C.C.*, 46 F.3d 970, 975 (9th Cir. 1995).

### 3.  The TCPA Is a Content-Based Statute

Section 227(b)(1)(A)(iii) of the TCPA, the provision upon which Plaintiff bases his First Count for Relief, originally prohibited any call to a "paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call " using an "automatic telephone dialing system or an artificial or prerecorded voice" without prior express consent (*i.e.*, a blanket prohibition with an opt-out).  However, the TCPA was amended in 2015 to make content-based exemptions for calls "made solely to collect a debt owed to or guaranteed by the United States."  47 U.S.C. §§ 227(b)(1)(A)(iii); *see also* Pub. L. No. 114-74, 129 Stat. 584, 587 (2015).  For example, Section 227(b)(1)(A)(iii) of the TCPA currently states as follows, with emphasis added:

> to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call, **unless such call is made solely to collect a debt owed to or guaranteed by the United States**;

This 2015 amendments to the TCPA (which added the exemptions for debts owed to or guaranteed by the United States) is critically important to the content-based nature of the TCPA because coverage under this section of the TCPA turns entirely upon the content of the message conveyed by the speaker of the telephone call.  For example, a telephone call that attempted to collect a government-backed student loan would be permissible under the TCPA.  It makes no difference if the caller is the United States, a party working on behalf of the United States, or some other third party.  As long as the content of the call is related to the collection of a government-backed debt, the call is exempt from the prohibitions of Section 227(b)(1)(A)(iii).  In contrast, if the same calling party made a phone call to promote a political message, or to inform the listener about a favorable business transaction for the sale of electricity services, then the telephone call would be deemed to be impermissible under the amended TCPA.  Accordingly, it is clear that the TCPA makes

distinctions based solely on the content of the message being conveyed as opposed to any express or implied relationship between the parties.  Thus, under the standards set forth in Reed, the TCPA should be subject to strict scrutiny, because the TCPA does not apply its prohibitions in a content-neutral manner.

Post-Reed, every district court considering the issue save one has reached this conclusion and has analyzed the TCPA using a strict scrutiny analysis.  *See Am. Ass'n of Political Consultants v. Sessions*, No. 5:16 cv 252-D, 2018 WL 1474075, at *1 (E.D.N.C. Mar. 24, 2018); *Gallion v. Charter Commc'ns, Inc.*, 287 F. Supp.3d 920, 928-31 (C.D. Cal. 2018); *Greenley v. Laborers' Int'l Union of N. Am.*, 271 F. Supp.3d 1128, 1145-51 (D. Minn. 2017); *Mejia v. Time Warner Cable, Inc.*, No. 15 cv 6445, 2017 WL 3278926, at **12-17 (S.D.N.Y. Aug. 1, 2017); *Holt v. Facebook, Inc.*, 240 F. Supp.3d 1021, 1032-34 (N.D. Cal. 2017); *Brickman v. Facebook, Inc.*, 230 F. Supp.3d 1036, 1043-49 (N.D. Cal. 2017).  This Court should also apply a strict scrutiny analysis to the TCPA.

### 4.  The TCPA Does Not Survive the Required Strict Scrutiny Examination

The U.S. Supreme Court in Reed explained that the strict scrutiny test of content-based statutes operates as follows:

> [strict scrutiny] requires the Government to prove that the restriction furthers a compelling interest and is narrowly tailored to achieve that interest,'" *Arizona Free Enterprise Club's Freedom Club PAC v. Bennett*, 564 U.S. [721], 131 S. Ct. 2806, 2817, 180 L. Ed. 2d 664 (2011) (quoting [*Citizens United v. Fed Election Comm'n*, 558 U.S. 310, 340 (2010), 130 S. Ct. 876)].[2]

---

[2] *Reed* 135 S.Ct. at 2232.  Moreover, a content-based restriction on speech is "presumed invalid," and the Government bears the burden of showing its constitutionality.  *United States v. Stevens*, 533 F.3d 218, 232 (3d Cir. 2008), *aff'd*, 559 U.S. 460 (2010)(internal citation omitted).

With respect to the first prong of the strict scrutiny analysis (i.e. furtherance of a compelling interest), past courts have found that statutes like the TCPA that are intended to protect residential privacy are to further a legitimate government interest. However, no appellate authorities have actually concluded that "privacy" rises to the level of a "compelling" state interest such that the TCPA would withstand a strict scrutiny analysis. *See, e.g., Carey v. Brown*, 447 U.S. 455, 470 (1980) (the government "may protect individual privacy by enacting … regulations applicable to all speech irrespective of content") (emphasis added).[3] In fact, several circuit courts have expressly held that "privacy" is not a compelling interest and cannot justify content-based speech restrictions. *See Cooper v. Dillon*, 403 F.3d 1208, 1218 (11th Cir. 2005) ("safeguarding the privacy interests of targets, witnesses, and complainants" in police investigations is "not sufficiently compelling to uphold [the content-based speech] restrictions"); *Wollschlaeger v. Governor, Fla.,* 848 F.3d 1293, 1314 (11th Cir. 2017) (en banc) ("protection of individual privacy" failed to justify content-based restriction of doctors' speech). At most, "privacy" is a "substantial interest[]," *Pine v. City of W. Palm Beach*, 762 F.3d 1262, 1269 (11th Cir. 2014), insufficient to withstand strict scrutiny; *Kirkeby v. Furness*, 92 F.3d 655, 659 (8th Cir. 1996) ("[T]he Supreme Court has never held that [privacy] is a compelling interest … and we do not think that it is.").[4]

As noted above, the application of the strict scrutiny test also requires a reviewing court to examine whether the TCPA "does not burden substantially more speech than is necessary (*i.e*., the statute must be narrowly tailored)." *Flaherty v. Knapik*, 999 F. Supp. 2d 323, 338 (D. Mass.

---

[3] *See also Frisby v. Schultz*, 487 U.S. 474, 482 (1988)(noting that challenged law was content neutral and using intermediate scrutiny rather than strict scrutiny).

[4] *See also Victory Processing, LLC v. Michael*, No. 17-CV-109-ABJ, 2018 WL 4204349 (D. Wyo. Aug. 6, 2018)(striking state analog of TCPA as unconstitutional based on a finding that residential privacy is not a "compelling interest").

2014).[5]  In other words, the strict scrutiny test's "narrowly tailored" language requires that the statute is not over-inclusive; *see also Frisby v. Schultz*, 487 U.S. 474, 485 (1988) (stating that a law is narrowly tailored if it targets "no more than the exact source of the 'evil' it seeks to remedy.").  However, the subject portion of the TCPA is indeed over inclusive because its restrictions improperly apply to *all* commercial calls, thereby, incorrectly assuming that consumers do not wish to receive any of the currently prohibited commercial telephone calls, absent prior express consent.

Indeed, as noted above, several district courts have properly applied a strict scrutiny analysis to the TCPA.  However, each of those courts has failed to analyze the direct applicability of the Supreme Court's decision in *United States v. Playboy Entm't Group, Inc.,* 529 U.S. 814-15 (2000) to the "opt-out" rather than "opt-in" approach of the statute.  *Playboy Entm't Group, Inc.* is the leading case in one of a long line of cases where courts have repeatedly found that statutes are not "narrowly tailored" when they prohibit speech to all residences where it is feasible to allow only those households who do not wish to receive the speech to opt in to privacy protection.  *See, e.g.*, *Playboy Entm't Group, Inc.,* 529 U.S. at 814-15 (noting that blocking certain channels to all cable subscribers is unnecessarily restrictive, as the subscribers who did not wish to receive these channels could opt out of receiving them); *Martin v. City of Struthers, Ohio*, 319 U.S. 141, 147–49 (1943) (invalidating ban on door-to-door solicitation while noting that regulation banning solicitation when homeowner has indicated a desire not to be disturbed is appropriate); *IMS Health Inc. v. Sorrell*, 630 F.3d 263, 278 (2d Cir. 2010), *aff'd*, 564 U.S. 552 (2011); *see also Rowan v.*

---

[5] The *Reed* Court explained that the strict scrutiny test of content-based laws "…requires the Government to prove that the restriction furthers a compelling interest and is narrowly tailored to achieve that interest[.]'" *Reed*, 135 S. Ct. at 2232 (citing *Arizona Free Enterprise Club's Freedom Club PAC v. Bennett*, 564 U.S. 721, 734 (2011) (quoting *Citizens United*, 558 U.S. at 340)).

*United States Post Office*, 397 U.S. 728 at 737-738 (1970); *Mainstream Mktg. Servs., Inc. v. F.T.C.*, 358 F.3d 1228, 1242–43, 1246 (10th Cir. 2004) (upholding "do not call" list as constitutional restriction on commercial speech in part because consumers actively joining "do not call" registry before commercial telephone calls are barred is less restrictive of speech than requiring consumers to consent to receiving such calls before they could be made).

An illustration of this principle, is in fact, the national do-not-call registry, an "opt-in" rather than an "opt-out" regime that, similar to the TCPA's purpose, is designed to reduce intrusions into personal privacy and to reduce the risk of telemarketing fraud and abuse that accompany unwanted telephone solicitation. *See* 15 U.S.C. § 6101; *See also ACA Int'l*, 885 F.3d at 692. However, unlike the TCPA itself, the national do-not-call registry directly advances those goals with the opt-in approach that is not over-inclusive.

The district court cases which allowed the TCPA to survive a strict scrutiny analysis all made the same mistake. They all assumed that an "opt-in" regime for the TCPA, such as the do-not-call registry's "opt-in" regime, would not be as effective as the TCPA's blanket "opt-out" prohibition, because it would place a burden on the consumer to take an affirmative step to block unwanted calls.[6] However, this flies in the face of clear United States Supreme Court precedent which holds that such a burden cannot justify an over inclusive restriction on freedom of speech.

> It is no response that voluntary blocking requires a consumer to take action, or may be inconvenient, or may not go perfectly every time. A court should not assume a plausible, less restrictive alternative would be ineffective; and a court should not presume [consumers], given full information, will fail to act.

---

[6] *See, e.g.*, *Gallion*, 287 F. Supp.3d at 930; *Brickman*, 230 F.Supp. 3d at 1048-49; *Holt*, 240 F. Supp.3d at 1034; *Greenley*, 271 F. Supp.3d at 1150-51.

*Playboy Entm't Grp., Inc.*, 529 U.S. at 823–24.   Moreover, the Government has repeatedly defended the efficacy of the do-not-call regime and courts have repeatedly upheld it as a valid protection for residential privacy.  *See, e.g., Mainstream Mktg. Servs., Inc.*, 358 F.3d at 1240; *see also Nat'l Fed'n of the Blind v. F.T.C.*, 420 F.3d 331, 342 (4th Cir. 2005).  In sum, the do-not-call list is a narrowly tailored, constitutional alternative to Section 227(b)(1)(B)'s blanket prohibition, an alternative that directly advances the government's interests—reducing intrusions upon consumer privacy and the risk of fraud or abuse—by restricting a substantial number (and also a substantial percentage) of the calls that cause these problems.  The TCPA's failure to provide such an alternative is constitutionally fatal.

A final consideration examined by some courts in ruling on these issues is the potential severance of the government-debt exemption from the TCPA to render it content neutral and thus avoid a strict scrutiny analysis.  *See Brickman*, 230 F. Supp. 3d at 1047.  However, this would have the effect of restricting more rather than less speech.  Courts have expressly forbidden such uses of the severability doctrine in the past.  *Rappa v. New Castle Cty.*, 18 F.3d 1043, 1072–73 (3d Cir. 1994).[7]  Moreover, this reasoning is based on the wholly unsupported conjecture that Congress would prefer to have Section 227(b)(1)(B)'s blanket prohibition in place even without the government-debt exemption.  There is nothing in the Congressional record that would support this position.  Bipartisan Budget Act of 2015, Pub. L. No. 114-74, § 301, 129 Stat. 584, 588 (2015).

---

[7] "We refuse to strike down the exception in part because of the special status of speech in our constitutional scheme, a scheme which generally favors more speech. A second reason is that if courts were to sever exceptions from content discriminatory statutes, individuals would lose much of their incentives to challenge such statutes, because those whose speech is banned would often not benefit from the remedy." *Rappa*, 18 F.3d at 1073.  The *Rappa* Court refused to sever the offending provision and further burden speech despite the fact that there was an applicable statute indicating the legislature's general preference for severance and the Court's express acknowledgement that the rest of the statute could function independently.

- 10 -

Furthermore, the Supreme Court has consistently held that when faced with a speech restriction containing an impermissible content-based restriction, a court should strike the restriction, not set aside the exemption.  For example, in *Police Department of Chicago v. Mosley*, 408 U.S. 92 (1972), the Supreme Court evaluated an ordinance that prohibited school picketing, but which also contained a content-based exemption for picketing on labor issues.  *Id.* at 95.  The Court ruled that the ordinance violated the Constitution as an improper content-based restriction and remedied the violation by invalidating the entire picketing ordinance, not just the content-based exemption for labor picketing.  *Id.* at 102; *see also Carey v. Brown*, 447 U.S. 455, 471 (1980) (invalidating entirely an ordinance prohibiting residential picketing but which also contained a content-based exemption for picketing on labor issues); *Arkansas Writers' Project, Inc. v. Ragland*, 481 U.S. 221, 234 (1987) (invalidating the application of a state's general sales tax to magazines but which had granted exemptions to religious, trade, professional, and sports magazines).  Eliminating the restriction on speech entirely accomplishes the Court's directive for lower courts to employ remedies that "create incentives to [constitutional] challenges."  *Lucia v. SEC*, 138 S. Ct. 2044, 2055 n.5 (2018).  Additionally, striking down an exemption would impose retroactive liability on speakers who reasonably relied on that exemption when it was still active. Retroactive liability of this kind conflicts with the principle that the government must give speakers "fair notice" before restricting their speech, not after.  *FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012).  Invalidating a restrictive statute therefore avoids the constitutional problems associated with invalidating just the exemption.

Additionally, invalidating one exemption often leads to a regulatory re-write that the Supreme Court has discouraged courts from undertaking.  Unlike Congress, courts lack the "editorial freedom" to "blue-pencil" a statute or regulation.  *Free Enterprise Fund v. Public Co.*

*Accounting Oversight Bd.*, 561 U.S. 477, 509–10 (2010).  The TCPA's exemptions are scattered and numerous.  For example and as discussed, the statute exempts any call "made solely to collect a debt owed to or guaranteed by the United States." § 227(b)(1)(A)(iii).  The statute also permits the Federal Communications Commission to "exempt [calls] from the requirements of [§ 227(b)(1)(A)(iii)]" and to issue regulations implementing the Act. § 227(b)(2).  Invalidating these or any other exemptions rather than the restrictive parts of a statute would require a court to "blue-pencil" a complex statutory and regulatory scheme, thereby exceeding a court's limited role pertaining to statutory or regulatory re-writes.

In addition, severing the government-debt exception would still leave a content-based distinction between calls for emergency purposes, calls exempted by the FCC's rules, and all other calls.  Strict scrutiny would still apply and the TCPA would still be over-inclusive and not narrowly tailored.  Thus, the Plaintiff cannot use the severability doctrine to save the TCPA's clearly unconstitutional content-based restrictions on free speech.

### B.   Count III Should be Dismissed Because it is Based on an Alleged Violation an the Affirmative Defense (47 U.S.C. § 227(c)(5)(C)) and Is Not an Independent Cause of Action Under the TCPA

In Count III of his Complaint, Plaintiff cites to the subsection of the TCPA describing affirmative defenses as the basis for his cause of action.  Compl. ¶¶ 95, 96.  This is impermissible.  *See, e.g.*, Black's Law Dictionary (15(c)) (10th ed. 2014) (defining cause of action as "a legal theory of a lawsuit.")  An affirmative defense is obviously not a "legal theory of a lawsuit" for which Plaintiff can base his claim for relief.

Specifically, Plaintiff cites to the section which begins "It shall be an affirmative defense in any action brought under this paragraph that the defendant has established and implemented, with due care, reasonable practices and procedures to effectively prevent telephone solicitations in

violation of the regulations prescribed under this subsection" to base the allegations forming Count III.  Compl. ¶¶ 96 ("The defendants did not implement or established [sic] a no-call policy; did not register their intent with the State of New Jersey to solicit consumers in the forum state and did not purchase a no-call subscription from the FTC").  While Plaintiff does not cite to the TCPA's section which provides for a private right of action in alleging this behavior, it is clear that Plaintiff confused the private right of action section with the affirmative defense subsection as support for his claim.[8]

Therefore, because Plaintiff fails to state a claim upon which relief can be granted, because there is no valid claim made, Count III should be dismissed.

### C.  Count IV Should be Dismissed Because Does Not Indicate Which of the TCPA's Prohibitions Plaintiff is Alleging was Violated and is Duplicative of the Complaint's Previous Counts

Count IV of the Complaint is titled "Award for Statutory Trebled Damages for Willful Or Knowing Violations of the TCPA, 47 U.S.C. §227(b)(3)(C)."  Compl. p. 21.  However, the subsection referenced, 47 U.S.C. § 227(b)(3), does not contain any specific prohibitions and instead simply provides a private cause of action for violations of other parts of the statute.  As the Complaint notes, 47 U.S.C. §227(b)(3)(C) does provide for treble damages in cases of proven willful misconduct.  (Complaint ¶ 108).  However, it does not create any restriction on behavior upon which an independent cause of action could be based.  The TCPA contains numerous restrictions on conduct, and it is impossible to determine which of them Plaintiff intended to rely upon in asserting Count IV.  As such, Count IV does not allege a cause of action upon which relief

---

[8] "Private right of action.  A person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may, if otherwise permitted by the laws or rules of court of a State bring [suit] . . . ."  47 U.S.C. § 227(c)(5).

can granted. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)(holding that a complaint may be dismissed "if it fails to give the defendant fair notice of what the ... claim is and the grounds upon which it rests.").  At best, Count IV is duplicative of the previous counts in the Complaint which do attempt to identify specific restrictions in the TCPA.  Thus, this Court should dismiss Count IV as either insufficiently pled under Federal Rule of Civil Procedure ("FRCP") 12(b)(6) or as duplicative under FRCP 12(f).

> **D.     Count II Should be Dismissed Because Plaintiff Fails to Identify an Ascertainable Loss**

To state a claim under the New Jersey Consumer Fraud Act, a plaintiff must allege three elements: (1) unlawful conduct by the defendants; (2) ascertainable loss on the part of the plaintiff; and (3) a causal relationship between the defendants' unlawful conduct and the plaintiff's ascertainable loss.  N.J.S.A. § 56:8-19; *see also Pollard v. AEG Live, LLC*, No. 14-1155, 2016 WL 3450818 (D. N.J. June 20, 2016).  To establish an "ascertainable loss" occurred, a plaintiff must produce evidence from which a factfinder could find or infer that the plaintiff suffered a quantifiable or otherwise measureable loss as a result of the alleged wrongdoing.  *Thiedemann v. Mercedes-Benz USA, LLC*, 183 N.J. 234, 248 (2005).  Additionally, "a claim of loss in value must be supported by sufficient evidence to get to the factfinder. . . . [T]he plaintiff must proffer evidence of loss that is not hypothetical or illusory.  It must be presented with some certainty demonstrating that it is capable of calculation . . . ."  *Id.* at 248.  After all, "[t]he certainty implicit in the concept of an 'ascertainable' loss is that it is quantifiable or measureable."  *Id.*  The standard of proving ascertainable losses, therefore, requires an allegation sufficient to demonstrate measurability or estimation of actual losses.

Plaintiff alleges that his "ascertainable losses" include a loss of minutes from his cellular plan, answering the defendant's calls, the cost to charge his phone, and the unnecessary

consumption and decline in allowable charging cycles.  Compl. ¶ 88.  With respect to the loss of minutes from his cell phone plan, Plaintiff provides absolutely no allegations supporting this contention, which fails to meet the standard set forth in *Thiedemann* requiring "sufficient evidence to get to the factfinder."  *Thiedemann*, 183 N.J. at 248.

The other damages claimed by plaintiff are similarly deficient in meeting the standards established by the New Jersey Supreme Court.  First, none of these allegations are supported by any type of evidence of an actual loss.  Additionally, none of these losses are capable of calculation or even estimation.  Plaintiff's allegation is incapable of being quantified or even estimated.  These "losses" are therefore incapable of being quantified or measured and therefore fall far short of the standards required to prove an ascertainable loss.

Demonstrating an "ascertainable loss" requires a heightened showing of evidence that the bare allegations asserted in Count II completely lack.  Because Plaintiff failed to show any quantifiable, measurable, or even estimated evidence of an ascertainable loss, Count II of his Complaint should be dismissed.

### E. The Plaintiff is not Entitled to Much of the Relief That He Seeks

Among other requests, the Plaintiff asks the Court to award him punitive damages, attorneys' fees (despite the fact that he is proceeding in this matter *pro se*), a new I-Phone, and permanent injunctive relief.  Compl. p. 24.  However, Plaintiff is not entitled to any of these forms of relief, and they should be struck from the Complaint.  Plaintiff does not identify any statutory authority under which he would be entitled to punitive damages or a new phone and Defendant is not aware of any.   As Plaintiff's claims are entirely based upon statutorily created causes of action his relief is limited to that which is expressly provided by those statutes, and the statutes on which the Plaintiff relies simply do not provide such relief.  With respect to attorneys' fees, generally

- 15 -

speaking, they are not available to parties representing themselves in litigation. *See Cunningham v. Kondaur Capital*, No. 3:14-1574, 2014 WL 8335868, at *3 n. 2 (M.D. Tenn. Nov. 19, 2014), *report and recommendation approved*, No. 3:14-CV-01574, 2015 WL 1412737 (M.D. Tenn. Mar. 26, 2015).

Regarding the Plaintiff's request for a permanent injunction, it is true that Section 227 (b)(3)(A) of the TCPA provides that a person may bring "an action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation[.]"; However, Plaintiff does not allege that he has received a call from Liberty Power in over three years and does not allege that he is in imminent danger of receiving a call from Liberty Power. *See* Compl. Ex. 1.  In fact, Plaintiff alleges that his telephone number is on not only the National Do Not Call List, but also on the New Jersey State Do Not Call List as well.  Plaintiff is in essentially the same position.  Thus, under the facts and applicable law, Plaintiff lacks standing to seek permanent injunctive relief and his request for that relief should be dismissed with prejudice.

Standing to seek an injunction turns on whether the plaintiff is likely to suffer future injury. *City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983).  "The purpose of an injunction is to prevent future violations, *Swift & Co. v. United States*, 276 U.S. 311, 326 (1928) and, of course, it can be utilized even without a showing of past wrongs.  But the moving party must satisfy the court that relief is needed.  The necessary determination is that there exists some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive." *United States v. W. T. Grant Co.*, 345 U.S. 629, 633 (1953).

Indeed, standing to seek injunctive relief requires that the plaintiff show he is in danger of imminent harm absent injunctive relief.  At the motion to dismiss stage in cases involving requests for injunctive relief, the plaintiff must satisfy an additional requirement by alleging an immediate

threat of future injury.  *Lyons*, 461 U.S. at 111.  There must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (internal citations, quotations, and brackets omitted).  "It must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Id.* (citing *Simon v. E. Kentucky Welfare Rights Org.*, 426 U.S. 26, 38 (1976)). *See Connor B. ex rel. Vigurs v. Patrick,* 771 F. Supp. 2d 142, 151 (D. Mass. 2011)("To satisfy Article III's standing requirement, a plaintiff must assert (1) an injury in fact that is (a) concrete and particularized and (b) actual or imminent; (2) a causal connection between the above injury and a defendant's conduct; and (3) a likelihood that judicial relief will redress the above injury.").

       Decisions on injunctive relief for TCPA claims from around the country follow the above and look to the absence of likelihood of future harm as the key factor when denying injunctive relief. *See Lary v. Trinity Physician Fin. & Ins. Servs*., 780 F.3d 1101, 1107 (11th Cir. 2015) (declining to issue permanent injunction in TCPA case because Plaintiff failed to show likelihood of future harm nor the inadequacy of his remedy at law); *Bank v. Caribbean Cruise Line, Inc.*, No. 12-CV-584, 2014 WL 1883586, at *2 (E.D.N.Y. May 12, 2014) (refusing to issue an injunction "… absent a showing that there is a reasonable likelihood that [Defendant] will engage in future violations of the TCPA."), *vacated on other grounds*, 606 F. App'x 28 (2d Cir. 2015); *Hamilton v. Voxeo Corp.*, No. CIV.A. 3:07-CV-404, 2009 WL 1868541, at *3 (S.D. Ohio June 25, 2009) ("Nevertheless, Plaintiff has not shown that a preliminary injunction is necessary to prevent further violations of the TCPA."); *Edwards v. Emperor's Garden Rest.*, 122 Nev. 317, 325–26, 130 P.3d 1280, 1285 (2006) (affirming the trial court's denial of injunctive relief after Defendant sent two

faxes violating the TCPA and holding "…even a party requesting an injunction, who has shown that the statutory conditions have been met, must demonstrate a likelihood of future violations before an injunction will issue."); *cf. Minnesota ex rel. Hatch v. Sunbelt Commc'ns & Mktg.*, 282 F. Supp. 2d 976, 980 (D. Minn. 2002) (issuing an injunction in a TCPA case because "[f]urthermore, it is evident that, absent an injunction, Sunbelt would continue to violate the TCPA.").

In addition to issues with respect to lack of standing, Plaintiff's injunctive relief should be denied because the controversy underlying such requested relief has become moot. *See Ford v. Reynolds*, 167 Fed. App'x. 248, 249 (2d Cir. 2006); *Cody v. Cox*, 509 F.3d 606, 609 (D.C. Cir. 2007).[9]  "In order to have a case determined moot, the defendant must show that 'there is no reasonable expectation that the wrong will be repeated.'" *Ingerson v. Pratt*, No. CIV.A. 76-3255-S, 1981 WL 687506, at *17 (D. Mass. Sept. 17, 1981) (quoting *United States v. W. T. Grant Co.*, 345 U.S. 629, 633 (1953) (quoting *United States v. Aluminum Co. of Am.*, 148 F.2d 416, 448 (2d Cir. 1945)).  "The defendant's voluntary cessation of the conduct for which such relief is sought will render the controversy moot." *Easterling v. Connecticut, Dep't of Correction*, 265 F.R.D. 45, 53 (D. Conn. 2010), *modified*, 278 F.R.D. 41 (D. Conn. 2011).

Because Plaintiff has not alleged he received a telephone call violating the TCPA in the past 1165 days, his telephone number is on both the national and state do-not-call lists, and Liberty Power is well aware of this lawsuit, there is no imminent likelihood, nor has any even been alleged,

---

[9] Mootness is a corollary to standing.  Federal Courts have jurisdiction to hear cases and controversies under "… the Laws of the United States..." U.S. CONST. ART. III, § 2, CL. 1.  "The rule in federal cases is that an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975) (citing cases) (quoting *Steffel v. Thompson*, 415 U.S. 452, 459 n.10 (1974)).

of Plaintiff receiving another telephone call from Liberty Power that violates the TCPA.  He thus

lacks standing to pursue injunctive relief and his claim is moot.

**IV.**     <u>**CONCLUSION**</u>

For the foregoing reasons, all of Plaintiff's TCPA claims should be dismissed, with

prejudice.


**ECKERT SEAMANS CHERIN &
MELLOTT, LLC**
*Attorneys for Defendant,*
*Liberty Power Corp., LLC*

By:     /s/ Nicholas M. Gaunce
Nicholas M. Gaunce


Dated:  April 16, 2019